UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON,

    Plaintiff,

v.

QUICKIE'S BURGERS & WINGS, INC,
d/b/a Quickies Burgers & Wings

    Defendant.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff, James Watson ("Plaintiff") hereby sues Defendant, Quickie's Burgers & Wings, Inc, ("Defendant") doing business as Quickies Burgers & Wings, for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, et seq.

1. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See also* 28 U.S.C. § 2201 and § 2202.

3. Plaintiff is a Florida resident, lives in Miami-Dade County, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff is substantially

limited in the major life activity of seeing. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2).

4. Plaintiff uses the internet and a mobile device to help him navigate a world of goods, products and services like the sighted. The internet, websites and mobile applications provide him a window into the world that he would not otherwise have. He brings this action against Defendant for offering and maintaining a mobile website (software that is intended to run on mobile devices such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the Apple Screen Reader VoiceOver software to read computer materials and/or access and comprehend internet mobile website information which is specifically designed for the visually impaired.

5. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors mobile websites to ensure and determine whether places of public accommodation and/or their mobile websites are in compliance with the ADA.

6. Defendant, Quickie's Burgers & Wings, Inc, a Florida for-profit corporation, which on information and belief owns and operates a chain of fast-food restaurant branded "Quickies Burgers & Wings" located within the Southern District of Florida, either through franchisees, affiliates, partners or other entities, including their location at 18405 NW 27th Ave, Miami Gardens, and open to the general public. As such, it is a Place of Public Accommodation subject to the requirements of Title III of the ADA and it's implementing regulation as defined by 42 U.S.C. §12181(7)(B), §12182, and 28 C.F.R. §36.104(2). Defendant's restaurant is also referenced as "place of public accommodation", "Quickies Burgers & Wings" or "Restaurant."

7. Defendant is defined as a "Public Accommodation" within meaning of Title III

because Defendant is a private entity which owns and/or operates "[A] restaurant, bar, or other establishment serving food or drink" and as "a place of entertainment" pursuant to §§12181(7)(B) &(C), §12182, and 28 C.F.R. §§36.104(2) & (3).

8. Subsequent to the effective date of the ADA, Defendant constructed, or caused to be constructed, and/or became a beneficiary of the website https://quickiesburgers.com (hereinafter "mobile website"), which is designed for the general public to access on their mobile devices (phones, tablets). This mobile website supports, is an extension of, is in conjunction with, is complementary and supplemental to Defendant's public accommodation. The mobile website provides information about Defendant's public accommodation, including specials, goods, services, accommodations, privileges, benefits and facilities available to patrons at the restaurant's physical location.

9. The mobile website is offered by Defendants as a way for the public to become familiar with "Quickies Burgers & Wings", menu selections, hours of operation, restaurants' location, amenities, lunch specials, and other information Defendant seeks to communicate to the public. Through the mobile website the public can place an order online to-go, or schedule for delivery within the restaurant, join their Tasty Rewards for exclusive offers and rewards, and sign up for future deals and specials from "Quickies Burgers & Wings". The mobile website also provides the ability for the public to contact the restaurant with any inquiries about "Quickies Burgers & Wings" services, and link to "Quickies Burgers & Wings" Facebook page to learn about pop-ups and specials. By the provision of menu selection, the ability to place a to-go order, and contact the restaurant online, the mobile website is an integral part of the goods and services offered by Defendant. By this nexus, the mobile website is characterized as a Place of Public

Accommodation subject to Title III of the ADA[1], 42 U.S.C. § 12181(7)(B) and 28 C.F.R. § 36.104(2) and (5).

10. The mobile website allows mobile device users to use a mobile platform through a connection to Wi-Fi or cellular data so that users can manage their dining choice from their mobile device. As such, the mobile website is subject to the ADA because it is offered as a tool to promote, advertise and sell products and services from Defendant's restaurant, which is a place of public accommodation. As a result, the mobile website must interact with the public, and in doing so must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.[2]

11. Defendant's mobile website does not properly interact with VoiceOver screen reader software technology in a manner that allows Plaintiff (a visually impaired person) to comprehend the mobile website and does not provide other means of accommodation.

12. Like the seeing community, Plaintiff would like the opportunity to be able to use the mobile website to test whether he can comprehend the restaurant menu selections, place an order, and contact the restaurant with any inquiries online. However, unless Defendant is required

---

[1] Ensuring Web Accessibility for people with disabilities has become a priority for the Department of Justice. The Department of Justice Civil Rights Division has taken the position that both State and local government websites (Title II) and the websites of private entities that are public accommodations (Title III) are covered by the ADA. On March 18, 2022, the DOJ issued guidance on Web Accessibility, see https://beta.ada.gov/resources/web-guidance/. The guidance states that individuals with disabilities should not be denied equal access to information, and inaccessible websites are as excluding as are access barriers to physical locations. DOJ guidance requires that website barriers must be identified, prevented, and removed so that all Title II and Title III entities offer websites that are accessible to people with disabilities.

[2] According to Statista, almost half of web traffic in the United States originated form mobile devices in 2021. Therefore, Defendant knew or should have known that potential customers would be using the mobile version of its website and provided accessibility for blind users.

to eliminate the barriers to Plaintiff's ability to communicate with Defendant through the mobile website, Plaintiff will continue to deny full and equal access to the mobile website and will be deterred from fully using that mobile website.

13. Plaintiff is continuously aware of the violations on the mobile website and is aware that it would be a futile gesture to attempt to utilize that mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

14. Defendant and alike restaurants are fully aware of the need to provide full access to all visitors to the mobile website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

15. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this action is his only means to secure adequate redress from Defendant's discriminatory practice.

16. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

17. Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to recover those attorney's fees, costs and expenses from Defendant pursuant to 42 U.S.C. §12205 and 28 CFR 36.505.

**COUNT I – VIOLATIONS OF TITLE III OF THE ADA**

18. The ADA requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective, which includes the

provision of auxiliary aids and services for such purpose.

19. According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. Section 36.303(b)(2) specifically states that (VoiceOver) screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

20. 28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

21. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

22. The mobile website has been designed to integrate with "Quickies Burgers & Wings" through the provision of menus, the ability to contact the restaurant online. Defendant has extended "Quickies Burgers" restaurant into individual persons' homes and portable devices wherever located through the mobile website which is a service, facility, privilege, advantage, benefit and accommodation of its restaurant. Because the mobile website is integrated with, and is a nexus to, Defendant's brick-and-mortar restaurant, it is governed by the following provisions:

   a. U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

b.  42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

c.  42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

d.  42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

e.  42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

f.  42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an

individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

    g. 42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

    h. 42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]"

  23. Plaintiff attempted to access and test the mobile website but was unable to do so because the mobile website contains barriers to effective communication for visually impaired individuals such as himself. Plaintiff continues to be unable to effectively communicate with Defendant through the mobile website and understand the content therein because numerous portions of the mobile website do not interface with mobile VoiceOver screen reader software. Specifically, features of the mobile website that are inaccessible to Plaintiff (a VoiceOver screen reader software user) include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

  i Guideline 1.1.1 – Non-Text Content. Multiple product images in the 'Lunch Special' section and all of the images in the 'Quickie's Burger's' section of the homepage receive

focus and are announced, but they do not have meaningful labels. For example, the first image in the Lunch Special section is announced as a long series of numbers and characters. The announcement is so long that it takes more than 25 seconds for just one image to be announced and there are a total of 9 images labeled like this on just the homepage. Note - this is with the VoiceOver speaking rate set to the default.

ii   Guideline 2.4.1 – Bypass Blocks. Skip navigation is announced, but it does not work. When a SRU activates it, then focus moves to the logo instead of the main content.

iii  Guideline 4.1.2 – Name, Role, Value. When placing an online order for the Dania Beach location, users found an accessibility toggle button which we activated when it was announced. After it was activated, each of the food categories in the Menu section changed to become collapsed buttons. A user must expand each button to access the individual dishes for each category, but they may not be able to do so because the buttons are announced as only text. For example, when we navigated to the Fish Platters button which is shown in a collapsed state, then only "Fish Platters" was announced. Users are given no indication that this is a button which must be expanded.

iv   Guideline 1.4.5 – Image of Text. The menu is displayed as two images with text. These images are not labeled and none of the content in either menu image is announced or navigable so SRUs cannot access the menu content.

24. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may be related to the third-party vendor's reservation platform does not absolve Defendant of culpability. Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); See *Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

25. As the owner and/or operator and/or beneficiary of a mobile website which serves as a gateway to Defendant's restaurant. Defendant is required to comply with the ADA and the provisions cited above. This includes Defendant's obligation to create, maintain and operate a mobile website that is accessible to Plaintiff so that he (as a visually impaired person) can enjoy full and equal access to the mobile website and the content therein, including the ability comprehend menu selections, place an order, and to test for his ability to contact the restaurant online.

26. Defendant has violated the ADA by failing to interface the mobile website which is directly linked to its restaurant with VoiceOver screen reader software utilized by Plaintiff (a visually impaired individual) (reference violations delineated within paragraph 23) either directly or through contractual, licensing, or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff effective communication on the basis of his disability in accordance with 28 C.F.R. Section 36.303 *et seq*:

    a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

    b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

    c. in failing to afford Plaintiff the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

    d. by providing Plaintiff a good, service, facility, privilege, advantage, or

accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

  e. by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

  f. notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

  g. by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

  h. by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

  27. Plaintiff is continuously aware of the violations within the mobile website and is aware that it would be a futile gesture to attempt to utilize and/or test the mobile website as long

as those violations exist.

28. As the result of the barriers to communication which are present within the mobile website and by continuing to operate and/or benefit from the mobile website with such barriers, Defendant has contributed to Plaintiff's frustration, humiliation, sense of isolation and segregation and has deprived Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the barriers to effective communication within the mobile website and knowing that it would be a futile gesture to attempt to utilize the mobile website, Plaintiff has been deprived of the meaningful choice of utilizing the same services of a public accommodation which are readily available to the general public and has been deterred and discouraged from doing so. By benefiting from and/or maintaining a mobile website with barriers to effective communication, Defendant has deprived Plaintiff the equality of opportunity which it offers to the general public.

29. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's violations until Defendant is compelled to comply with the requirements of the ADA and conform the mobile website to WCAG 2.1 Level A and AA Guidelines.

30. Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to its mobile website. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant when he visits the mobile website to test for compliance with the ADA. Plaintiff desires to access the mobile website to avail himself of the benefits, advantages, goods and services therein, and/or to assure herself that the mobile website is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the mobile website without fear of discrimination.

31. Plaintiff is without adequate remedy at law and has suffered (and will continue to suffer) irreparable harm.de The Plaintiff will continue to suffer injury and damage without the immediate relief as requested herein.

32. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter the mobile website to make it readily accessible to and usable by usable by Plaintiff (a visually impaired person).

**WHEREFORE,** Plaintiff, James Watson hereby demands judgment against Defendant, Quickie's Burgers & Wings, Inc, d/b/a Quickies Burgers & Wings and requests the following injunctive and declaratory relief:

a. The Court issue a Declaratory Judgment that determines that Defendant's mobile website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b. The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain the mobile website which serves as a gateway to its restaurant to ensure that it is readily accessible to and usable by persons with vision impairment;

c. The Court issue an Order directing Defendant to alter its mobile website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

d. The Court issue an Order directing Defendant provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the mobile website for purposes of comprehending "Bottled Blonde" menu selections, and making reservations for dining within the restaurant, and during that

time period prior to the mobile website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so that disabled individuals are not impeded from obtaining the goods and services made available to the public through Defendant's mobile website.

e. The Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

f. The Court enter an Order directing Defendant to continually update and maintain its mobile website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g. The Court award attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and,

h. The Court provide such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this October 13, 2023.

By: */s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
FBN: 628166
J. COURTNEY CUNNINGHAM, PLLC
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
Telephone:  305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*